## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **MIKEL BROWN,** ) | |
| ) | |
| **PLAINTIFF,** ) | |
| ) | |
| **VS.** ) | **CASE NO. 05-CV-551-CVE-FHM** |
| ) | |
| **JO ANNE B. BARNHART,** ) | |
| **Commissioner of the Social Security** ) | |
| **Administration,** ) | |
| ) | |
| **DEFENDANT.** ) | |

## REPORT AND RECOMMENDATION

Plaintiff, Mikel Brown, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1]  The matter has been referred to the undersigned United States Magistrate Judge for report and recommendation.  *See* 28 U.S.C. § 636(b).

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. §405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards.  *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994).  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as

---

[1] Plaintiff's June 19, 2001application for Disability Insurance benefits was denied initially and upon reconsideration.  A hearing before an Administrative Law Judge (ALJ) was held November 20, 2002.  By decision dated December 10, 2002, the ALJ entered the findings which are the subject of this appeal.  The Appeals Council denied review of the findings of the ALJ on July 23, 2005.  The action of the Appeals Council represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. §§ 404.981, 416.1481.

adequate to support a conclusion. *Doyal v. Barnhart*, 331 F.3d 758 (10th Cir. 2003). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).  Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

Plaintiff was born August 24, 1961, and was 41 years old at the time of the hearing. [R. 608-609].  He claims to be unable to work due to residual pain in his knees, hips and back caused by injuries he sustained on December 11, 1996, and he also alleges depression. [R. 347].  Plaintiff's previous application for Social Security benefits was denied and upheld by the Appeals Council on November 20, 1998.  Plaintiff filed a new application on June 19, 2001.  In order to qualify for benefits under the current application, Plaintiff must establish disability for the time period between January 2000 and December 31, 2001. [R. 18; Plaintiff's brief, p. 1; Defendant's response, p. 1]. *See also Washington v. Shalala*, 37 F.3d 1437, 1440  (10th Cir. 1994) (to obtain disability insurance benefits, claimant must establish that he became disabled on or before the date insurance expired).

The ALJ determined that Plaintiff has severe impairments consisting of bilateral knee problems, obesity and residuals from a fractured ankle [R. 19] but that he retained the residual functional capacity (RFC) to lift or carry up to ten pounds, stand or walk up to two total hours in an eight-hour workday (with normal breaks), sit up to six total hours in an eight-hour workday (with normal breaks) and no more than occasionally stoop. [R. 22].  Based upon the testimony of a vocational expert (VE), he determined that Plaintiff

was unable to perform his heavy to medium level past relevant work (PRW) but found that there were other jobs in the economy in significant numbers that Plaintiff could perform with that RFC. [R. 23].  He found, therefore, that Plaintiff was not disabled as defined by the Social Security Act before December 31, 2001. [R. 25].  The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant is disabled. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (describing the five steps); *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (setting forth the five steps).

Plaintiff asserts the ALJ committed reversible error in the following respects: 1) that he failed to properly analyze and give appropriate weight to the medical opinions of Plaintiff's treating physician; 2) that he failed to properly consider other significantly probative evidence relevant to this credibility analysis; and 3) that he failed to evaluate Plaintiff's musculoskeletal impairment and obesity under the applicable legal standards. [Plaintiff's Brief, p. 5].  For the reasons discussed below, the Court recommends the District Court affirm the decision of the Commissioner.

### Medical Evidence

The parties have summarized the medical evidence in the record in detail.  For purposes of this report, the Court notes the following medical treatment history:

On December 11, 1996, Plaintiff suffered crushing injuries to both legs while on the job. [R. 165-190].  After undergoing several surgeries Plaintiff received follow-up treatment care from Terrill H. Simmons, M.D., over the following two years, including arthroscopic surgery of the left knee. [R. 191-283].  Dr. Simmons released Plaintiff to return to light duty work on September 22, 1997. [R. 273].  On October 22, 1997, Dr. Simmons released

3

Plaintiff to return to light sedentary work "to tolerance" [R. 272, 437]. The doctor reported on November 7, 1997, that Plaintiff walked with an abnormal gait, favoring his left lower extremity; that his walking tolerance was approximately 100' without stopping and that he reported pain throughout the cycle. [R. 437]. On April 23, 1998, Dr. Simmons filled out an RFC form, indicating Plaintiff was able to lift/carry up to 20 lbs. occasionally, 10 lbs. frequently; that he was able to stand 0-2 hours, walk 0-2 hours and sit 4-6 hours in a work day; that he could occasionally bend/stoop; never squat, crawl/kneel or climb stairs/ladder; but that he could frequently reach. [R. 294]. He checked "yes" for ability to perform repetitive simple grasping, fine manipulation and reaching above shoulder level but checked "no" for pushing and pulling. Dr. Simmons marked "no" for ability to use legs for repetitive movement as in operating foot controls. He described restricted environmental factors as "cold constricts & causes severe pain in legs" and noted that Plaintiff's pain affects his ability to work and that his medication for pain on a daily basis might affect his ability to work. Dr. Simmons opined that Plaintiff would not be able to return to the same type of work he was doing before the injury. *Id.*[2]

Plaintiff was treated at Morton Comprehensive Health Services on July 16, 1998, for complaints of chronic pain in both lower extremities. [R. 447-448]. He gave a history of previous surgery and treatment by Dr. Simmons but stated he was no longer insured. *Id.* On July 30, 1998, probable arthritis was assessed. [R. 600].

---

[2] It is not clear whether the ALJ had this document before him when he assessed Plaintiff's RFC. He does not mention it at all in his decision but Plaintiff's attorney appeared to be referring to it at the commencement of the November 20, 2002 hearing. [R. 606]. The previous ALJ acknowledged the report and incorporated some of the findings into his RFC assessment in his decision dated November 20, 1998. [R. 302-311].

4

On August 31, 1998, Plaintiff commenced treatment at the Veteran's Administration Outpatient Clinic (VA) for left ankle and knee pain. [R. 511-515].   X-rays indicated degenerative changes and degenerative joint disease. [R. 516-520].  He was prescribed medication and scheduled for orthopedic consultation. [R. 510-511].  Plaintiff was described as morbidly obese, was advised to walk 30 minutes a day and received dietary counseling on October 22, 1998. [R. 508].  On December 31, 1998, Dr. Wallace B. Love noted that the orthopedist found nothing "that demanded surgery at this time." [R. 505].  Dr. Love noted that Plaintiff complained of "a lot of pain in both knees, calves, ankles ... made worse w/ weight bearing alone, and is no worse w/ ambulation than w/ simply bearing weight." *Id.* He was trying to work on his diet but was not able to exercise much.  He was encouraged to work with his upper body more. *Id.*  On May 15, 1999, Plaintiff's disabled parking sticker was renewed and he was prescribed support-hose for the right leg along with Naproxen for leg pain. [R. 501-502].  Improvement in joint pain was noted on September 23, 1999. [R. 498]. The doctor recommended swimming and upper body exercises due to leg limitations. *Id.*

Dr. Love noted on January 21, 2000, that Plaintiff complained of chronic limb pain but that he "continues to get by w/ the help of orthopedic braces, cane and the use of [medication]." [R. 495].  On June 13, 2000, Dr. Love observed that Plaintiff's pain was "better since he has been working out at the gym daily." [R. 490].  The doctor also noted "sweating bouts" when around other people which he deemed likely due to anxiety. [R. 491].  Six months later, Plaintiff requested refills of his medication from the VA pharmacy [R. 489].

Plaintiff was examined by Robert A. Paulsen, M.D., on July 6, 2000, for pain in his left side as well as pain in the left knee region. [R. 475-476].   X-rays revealed "very extensive hypertrophic change involving all joint compartments" and "extensive spurring noted along the tendinous insertion along the medial aspect of the right femoral condyle ... likely related to the patient's old crush injury with severe posttraumatic arthritis." [R. 417]. On July 30, 2000, Dr. Paulsen assessed post-traumatic arthritis of the knee and referred Plaintiff to Dr. Terrell (sic) Simmons. [R. 474].

Dr. Simmons examined Plaintiff on August 7, 2000, and wrote the following report:

> Mikel Brown presents again to discuss his knees.  He has bilateral degenerative joint disease.  He has pain with standing and walking.  I saw him in the past for medical treatment when he underwent surgical intervention for severe fractures in 1996 and 1997.  He is becoming more symptomatic, gradually worsening over the last six months.  Has pain with standing and walking and swelling within the knee joint.  Left knee is more symptomatic of the two.  Physical Findings: Athletic-appearing male.  Mild restricted range of motion to the knee. Crepitation within the knee.  Well healed surgical scars.  I feel that we need to get an MRI of the knee.  Scheduled for August 17. Diagnosis: Progressive degenerative joint disease.

[R. 459].  The MRI revealed marked deformity and posttraumatic changes of the medial femoral condyle with marked secondary degenerative change and diffuse degenerative joint disease, most severe at the posttraumatic site. [R. 418-419].

On August 30, 2000, Dr. Simmons wrote:

> Continues to have knee pain more than what he wants to tolerate.   States that he is thirty-nine and unable to do anything.  Pain with even sitting.  Both knees are about the same.  The right knee has more changes on x-ray.  In both cases, the only answer is a total knee replacement.  He is awfully young.  The risks including possible amputation are discussed.  Plan: Do a right total knee.  If it is successful, then we can choose between arthroscopic debridement on the left

6

> with Hyalgan.  We have done this before with only limited
> results.

[R. 459].  Total knee replacement surgery was performed on October 17, 2000. [R. 422-

433].[3]   Post-surgical complications and swelling were reported on November 3, 2000,

November 6, 2000 and November 8, 2000, which were treated with antibiotics. [R. 458].

On November 13, 2000, Dr. Simmons noted improvement, almost full weightbearing on the

leg and announced plans to carefully start working Plaintiff out of the knee brace. [R. 457].

Dr. Simmons reported Plaintiff was doing fairly well with the knee, swelling when he

overdoes it, does better with rest but progressing and motion was significantly better. [R.

457].  On December 29, 2000, Dr. Simmons wrote that Plaintiff was doing well, the swelling

was down, range of motion 0-105, stable and walking with a cane.  [R. 455].  He advised

Plaintiff to increase his activities, saying:

> Stationary bicycle.  Exercising.  Using weights.  Time to get the
> knee rehabilitated.  Also discussed work status.  He will be
> unable to return to his previous rotation.  He has been
> unemployed for four years.  He is certainly going to need some
> retraining and it will be a vocation that is primarily sedentary.
> He is capable of entering school at this time.

*Id.*

VA Outpatient Clinic progress notes from March 6, 2001, contain a comment that

a ZUNG depression screen (a self-rating depression questionnaire) indicated a score of 61.

[R. 487].  Dr. Love noted a ZUNG score of 64, reported that Plaintiff "admits that he is

down. Can't find a job." [R. 483].  Dr. Love also noted at that time that chronic bilateral leg

pain continued to be a problem and that Plaintiff had not taken Naproxen for some time,

---

[3]  A pre-operative note by Dr. Simmons stated: "Standing x-rays bone on bone contact." [R. 424].

7

which had helped before.[4]  *Id.*  He diagnosed depression, prescribed Zoloft and resumed

treatment of Plaintiff's chronic leg pain with Naproxen.[5] [R. 484].

On May 14, 2001, Dr. Simmons wrote:

> Mikel Brown is frustrated.  He wants to return to work but
> cannot do so.  He cannot find work with a total knee in place
> and a degenerative left knee.  Unable to afford having his left
> knee done.  Unable to get on Social Security.  Off Workmen's
> Comp.  Physical Findings:  The right knee has 0-110 degrees
> motion.  Stable.  Tenderness about the knee joint.  No
> evidence of chronic infection.  Overall, progressing
> satisfactorily.  Plan: Strengthen the knee.  Weight reduction.
> Left total knee replacement in the future. Work Status: Needs
> to be retrained from his normal vocational activity.

[R. 451-452, 454].

On June 15, 2001, Plaintiff returned to Dr. Paulsen for a second opinion about

further replacement in his joints. [R. 473].  Dr. Paulsen noted some swelling about the right

knee region and some laxity of the anterior cruciate ligament on the right.  *Id.*  He referred

Plaintiff to Dr. Scott Dunitz of orthopedics for evaluation of the left knee and ankles.  *Id.*

On July 6, 2001, at the VA clinic, Dr. Love noted Plaintiff's depression was better

since he has been on Sertraline. [R. 480].  Depression was not included in the list of

diagnoses on that date.  *Id.*

Scott J. Dumitz, M.D., examined Plaintiff on July 17, 2001. [R. 451].  He found

Plaintiff walked with marked antalgic limp, had good range of motion, medial joint line

tenderness bilaterally, lateral tenderness was mild, sensory exam was intact... "X-rays

---

[4]  Naproxen is a nonsteroidal anti-inflammatory drug with analgesic and antipyretic properties.
*Physicians' Desk Reference* (PDR), 53rd ed. (1999) 2672.

[5]  Zoloft (Sertraline) is a selective serotonin, used in treatment for depression. *PDR*, 53rd ed.
(1999) 2443.

confirm the presence of loosening of the joint."  He ordered a bone scan study. *Id.*  The scan, performed on August 9, 2001, revealed increased activity in the left knee with a distribution consistent with arthritis.  "Increased uptake is seen around the right knee prosthesis.  This is somewhat greater than expected for the time interval since surgery, however, it may still represent normal uptake." [R. 528].

Plaintiff was examined by Moses A. Owoso, M.D., on behalf of the Social Security Administration on August 20, 2001. [R. 529-536].  Dr. Owoso observed that Plaintiff's right lower extremity was larger than the left, that there was tenderness along the joint lines in both knees and crepitus in full range of motion in both knees, "[b]oth knees appear to be stable but significantly painful." [R. 531].  Range of motion tests indicated slightly reduced flexion in both knees. [R. 532, 533].

On August 24, 2001, Dr. Simmons wrote a letter "To Whom It May Concern" stating: "Mikel Brown is under my care for problems related to his knee.  He has complaints of pain which he feels will interfere with prolonged sitting, particularly with the concentration that would be required of a juror.  Please take this into consideration in your selections." [R. 451].

Plaintiff returned to the VA clinic on March 11, 2002. [R. 555-559].  Continuing chronic bilateral leg pain was noted to be a problem and depression was again noted as: "better since he has been on Sertraline." [R. 555].  He was prescribed Codeine to use sparingly.[6] *Id.*  Depression was not included in the diagnoses and there is no indication that refills of Sertraline were requested or authorized. *Id.*

---

[6]  Codeine is a narcotic analgesic. *PDR*, 53rd ed. (1999) 2252.

Plaintiff returned to Morton Health Clinic on October 28, 2002, where chronic knee pain and right lower extremity edema (swelling) was assessed. [R. 599]. X-rays on October 29, 2002, revealed negative postoperative right knee and severe osteoarthritis, left knee joint. [R. 598]. Plaintiff was prescribed Darvocet on November 4, 2002. [R. 597].

The remainder of the medical evidence in the record covers the time period after this date through April 2004, during which Defendant admits Plaintiff's condition significantly worsened. [Defendant's brief, p. 5].

### Treating Physician Opinion

According to what has come to be known as the treating physician rule, the Commissioner will generally give more weight to medical opinions from treating sources than those from non-treating sources. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir.2004) (citing 20 C.F.R. § 404.1527(d)(2)); *see also* 20 C.F.R. § 416.927(d)(2). In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." *See Watkins v. Barnhart*, 350 F.3d 1297, 2003 WL 22855009, at *2 (10th Cir. Dec. 2, 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques;" and (2) "consistent with other substantial evidence in the record." *Id.* If the opinion is deficient in either of these respects, then it is not entitled to controlling weight. *Id.* A treating physician's opinion may be rejected if it is brief, conclusory and unsupported by medical evidence. However, specific, legitimate reasons for rejection of the opinion must be set forth by the ALJ. *Frey v. Bowen,* 816 F.2d 508 (10th Cir. 1987). And, while

10

a physician may proffer an opinion that a claimant is totally disabled, that opinion is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the Commissioner.   *See* 20 C.F. R. §§ 404.1527(e)(2), 416.927(e)(2); *Castellano*, 26 F.3d  at 1028;, *Eggleston v. Bowen*, 851 F.2d 1244, 1246-7 (10th Cir. 1988) (if treating physician's progress notes contradict his opinion, it may be rejected).

In this case, Plaintiff asserts the ALJ failed to give the opinion of his treating physician at the Veterans Administration the evaluation the law requires. [Plaintiff's brief. p.6].   Implicit in Plaintiff's argument is a contention that Plaintiff's treating physician opined Plaintiff had an impairment of depression and that the ALJ improperly disregarded that opinion at step two when he determined Plaintiff does not have a medically determinable mental impairment.  The evidence to which Plaintiff refers is the VA treatment record indicating that Dr. Love diagnosed depression and prescribed medication for treatment of depression.  As Defendant points out, however, more than a diagnosis is required for the claimant to establish a severe impairment at step two. *See Bowen v. Yuckert*, 482 U.S. 137, 146 & n. 5 (1987) (claimant bears the burden at step two to present evidence that he has a medically severe impairment or combination of impairments); 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521(a).   Although step two requires only a "*de minimis*" showing of impairment, a "claimant must show more than the mere presence of a condition or ailment." *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir.1997) (citations omitted). The ALJ's step-two task is to determine, based on the record, whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). An impairment is "not severe if it does not significantly limit [a claimant's] ability to do basic work activities." 20 C.F.R. §

11

404.1521(a). Basic work activities are the "abilities and aptitudes necessary to do most jobs," and include the facility to understand, remember, and carry out simple instructions; to use judgment; to respond appropriately to supervisors, co-workers, and usual work situations; and to deal with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b)(3)-(6).  The step two severity determination is based on medical factors alone. *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir.2003).

After examination of the Administrative Record in this case, the Court concludes substantial evidence supports the ALJ's finding that Plaintiff did not suffer from a severe mental impairment during the relevant time period. The record shows that Plaintiff was diagnosed with depression by his treating physician at the VA Outpatient Clinic based upon his responses to the ZUNG questionnaire. [R. 483].   However, Dr. Love did not assess any functional limitations as the result of the diagnosis and, after prescribing medication which was noted to have helped Plaintiff's symptoms after four months, dropped the diagnosis from his list of assessed ailments.  Plaintiff was not referred for mental health treatment by Dr. Love and Plaintiff admits his depression improved. [Plaintiff's brief, p.7].  No other health care provider suggested Plaintiff was depressed or suffered from a mental impairment.  Nor did Plaintiff complain of depression or related symptoms to any other physician.  Thus, there was no "treating physician opinion" of functional impairment for the ALJ to consider.

Plaintiff has failed to establish the existence of a severe mental impairment as defined by the regulations. *See Williamson*, 350 F.3d at 1100 (holding that mere presence of condition, without proof that condition limits basic work activities, is insufficient for step two showing).

**Credibility Determination**

Plaintiff contends the ALJ improperly disregarded evidence that Plaintiff relied on a cane and orthopedic braces to be able to function and that he failed to consider medical opinions regarding the severity of Plaintiff's pain and consequent limitations. [Plaintiff's brief. p. 8].   Defendant responds that the ALJ accommodated Plaintiff's limitations caused by pain in his knees in his RFC assessment by restricting him to sedentary work activity.

The regulations provide a description of sedentary work activities as:  The ability to perform the full range of sedentary work requires the ability to lift no more than 10 pounds at a time and occasionally to lift or carry articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).   Further explanation is provided in S.S.R. 83-10, 1983 WL 31251, *5:  "Occasionally" means occurring from very little up to one- third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. *Id.*

At the hearing, Plaintiff claimed he was unable to engage in any work activities primarily because of his knees. [R. 614].    While the medical record does contain instances where medical care providers or examiners reported complaints of pain with

13

standing and walking and swelling in the knees, there is no expressed opinion that Plaintiff was unable to engage in sedentary work activities during the relevant time frame. Conversely, Plaintiff's surgeon in 1997 opined Plaintiff would be able to perform sedentary work and that he should be retrained vocationally to do so. [R. 272-273, 437]. After the knee replacement surgery in October 2000, the surgeon continued to express an opinion that Plaintiff could be retrained for sedentary work. [R. 455]. In May 2001, he reiterated his opinion that Plaintiff should be retrained from his normal vocational activity. [R. 454]. Although this doctor and other treating and examining physicians recorded Plaintiff's complaints about not being able to find work, none stated he should not work or that he lacks the physical or mental ability to engage in gainful activity. Plaintiff testified he had to elevate his legs during the day but he does not identify a single instance in the record where a doctor recommended or required elevation of the legs. [R. 617]. The orthopedic surgeon who handled Plaintiff's follow-up care after his knee replacement surgery said Plaintiff should increase his activities, ride a stationary bicycle and exercise, using weights, "time to get the knee rehabilitated." [R. 455]. Based upon the evidence in the record, the Court finds the ALJ was justified in his conclusion that the medical evidence did not support Plaintiff's claims of disabling pain from January 2000 through December 31, 2001.

After review of the record evidence, the Court agrees with Defendant that the ALJ properly considered the medical evidence and other factors in evaluating the credibility of Plaintiff's allegations of totally disabling pain. The Court acknowledges that the record has much evidence concerning Plaintiff's pain and his efforts to relieve it. However, Plaintiff is basically asking the Court to reweigh the evidence and to

14

substitute its judgment for that of the ALJ.  This it cannot do.  *Kelley v. Chater*, 62 F.3d 335, 337 (10th Cir. 1995); *Glenn v. Shalala*, 21 F.3d 983, 987-88 (10th Cir.1994) (despite existence of evidence contrary to ALJ's finding, appellate court must affirm if, "considering the record as a whole, including whatever fairly detracts from the findings, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion" (citation, further quotation omitted)).

Because the Court concludes that there is sufficient evidence in the record to support the ALJ's credibility findings and that the ALJ properly linked his credibility findings to the record, there is no reason to deviate from the general rule to accord deference to the ALJ's credibility determination. *See Gay v. Sullivan*, 986 F.2d 1336, 1339 (10th Cir.1993); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir.1992). (witness credibility is province of Commissioner whose judgment is entitled to considerable deference).

## Obesity

Plaintiff asserts the ALJ did not properly discuss the effects of obesity on his ability to ambulate and on his knee pain.  In his decision, the ALJ acknowledged Plaintiff's obesity and found that it, along with his bilateral knee impairments and residuals from a fractured ankle, was severe during the relevant time period. [R. 19]. He explained that he had considered Plaintiff's impairments and his subjective complaints individually and in combination in assessing an RFC that comports with Plaintiff's inability to do more than sedentary work activities. [R. 21].  There is nothing in the record that conflicts with this finding.  None of Plaintiff's physicians indicated that obesity was a factor affecting exertional or postural functions.  Nor did Plaintiff testify

that his weight contributed to his inability to engage in activities in any way.  The Court concludes that the factual record does not support Plaintiff's suggestion that obesity, either alone or in combination with other conditions, precluded him from performing sedentary work.

Plaintiff's last argument is that the ALJ failed to properly develop the record by obtaining medical expert testimony in light of the change in listing criteria after the agency physicians evaluated Plaintiff's claim.  This claim is also without merit.  In *Hawkins v. Chater*, 113 F.3d 1162 (10th Cir. 1997), the court said that "the starting place must be the presence of some objective medical evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation."  Nothing in Plaintiff's arguments or the medical record as a whole suggests that Plaintiff's knee impairment or obesity required further investigation before the ALJ could determine what functional limitations existed as a result of these conditions.

As to Plaintiff's argument in his reply brief that the ALJ did not properly discuss the evidence at step three of the evaluative sequence, the Court notes that at the hearing Plaintiff's counsel conceded Plaintiff does not meet a listing. [R. 606].  Although this does not relieve the ALJ of his duty to develop the record consistent with the issues raised, his decision contains a sufficient explanation of his findings for purposes of the Court's review.  After such review, the Court finds the ALJ's conclusion that Plaintiff's impairments do not meet the listings does not conflict with the evidence in the record. *See Fischer-Ross v. Barnhart*, 431 F.3d 729 (10th Cir. 2005) (holding ALJ's confirmed findings at steps four and five coupled with indisputable aspects of the medical record,

16

that no reasonable administrative factfinder could have resolved the factual matter in any other way, conclusively precludes claimant's qualification under the listings at step three, thus, any deficiency in ALJ's articulation of his reasoning to support his step three determination is harmless).

## Conclusion

The ALJ's decision demonstrates that he considered all of the medical reports and other evidence in the record in his determination that Plaintiff retained the capacity to perform sedentary work activities during the relevant time period. The record as a whole contains substantial evidence to support the determination of the ALJ that Plaintiff was not disabled from January 2000 to December 31, 2001.  Accordingly, the Court RECOMMENDS the decision of the Commissioner be AFFIRMED.

In accordance with 28 U.S.C. §636(b) and Fed. R. Civ. P. 72(b), a party may file specific written objections to this report and recommendation.  Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma within ten (10) days of being served with a copy of this report.

If specific written objections are timely filed, Fed.R.Civ.P. 72(b) directs the District Judge to:

> make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule.  The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Fed.R.Civ.P. 72(b); see also 28 U.S.C. § 636(b)(1).

The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the Magistrate Judge's findings or recommendations waives appellate review of factual and legal questions." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).  Only a timely specific objection will preserve an issue for de novo review by the district court or for appellate review.

SUBMITTED this 22nd day of January, 2007.

FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE