UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

MIKEL BROWN, )
 )
        Plaintiff, )
 )
v. ) Case No. 05-CV-0551-CVE-FHM
 )
MICHAEL J. ASTRUE,[1] )
 )
        Defendant. )

## OPINION AND ORDER

Now before the Court is the report and recommendation (Dkt. # 25) of Magistrate Judge Frank H. McCarthy recommending that the Court affirm the decision of the Commissioner of Social Security ("Commissioner"). Plaintiff objects to the report and recommendation, and requests that the case be remanded to the Social Security Administration ("SSA"). Defendant has not responded to plaintiff's objection.

### I.

Plaintiff Mikel Brown was born on August 24, 1961, and claims that he is unable to work in any occupation due to severe leg injuries. On December 11, 1996, plaintiff suffered serious injuries to both of his legs while on the job. He was unloading a truck when it slipped into gear and rolled backwards, pinning his legs between the truck and a concrete loading dock. Plaintiff underwent several surgeries and was treated by Terrill H. Simmons, M.D., over the next two years.

---

[1] On February 12, 2007, Michael J. Astrue was appointed as the Commissioner of Social Security, replacing Linda S. McMahon who became the Acting Commissioner of Social Security on January 22, 2007, replacing Commissioner Jo Anne B. Barnhart. Pursuant to Fed. R. Civ. P. 25(d)(1), Commissioner Astrue is substituted for Commissioner Barnhart as the defendant in this lawsuit. No further action need be taken by plaintiff to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

Dr. Simmons released plaintiff to return to light duty on September 22, 1997, but limited him to sedentary work. Plaintiff returned to Dr. Simmons in November 1997, and medical records show that plaintiff walked with an abnormal gait, that he could walk approximately 100 feet without stopping, and that he complained of pain while walking. On April 23, 1998, Dr. Simmons filled out a residual functional capacity ("RFC") form, and determined that plaintiff was unable to return to his former occupation.[2]

Plaintiff complained of chronic pain in both legs, and sought treatment at Morton Comprehensive Health Services on July 16, 1998. However, plaintiff's health insurance expired and he could no longer pay for private health care. He began treatment at the Veteran's Administration Outpatient Clinic ("VA clinic") on August 31, 1998, and was assigned to Wallace B. Love, M.D. Dr. Love found that plaintiff was suffering from degenerative joint disease and he noted that plaintiff was morbidly obese. Admin. Rec. at 508. Dr. Love prescribed pain medication and scheduled a follow-up orthopedic visit. He also referred plaintiff to a dietician and advised him to walk at least 30 minutes every day. When plaintiff visited Dr. Love on December 31, 1998, Dr. Love noted that plaintiff did not need surgery, but he still complained of pain throughout his legs. He found that plaintiff could not place any weight on his legs without increased pain, and suggested that plaintiff exercise his upper body to compensate for a lack of aerobic activity. Plaintiff walked with a cane to keep pressure off of his legs while walking. Plaintiff was trying to improve his diet, but admitted that he was drinking too much beer. Id. at 505.

---

[2] Dr. Simmons found that plaintiff could frequently lift objects up to 10 pounds and occasionally carry up to 20 pounds. He noted that plaintiff could sit for 4 to 6 hours during a work day, but could not stand or walk more than 2 hours per day. Plaintiff was taking pain medication for pain resulting from his leg injuries. Based on these considerations, Dr. Simmons felt that plaintiff could not resume the work he was performing before his injuries.

2

On May 10, 1999, plaintiff saw Dr. Love, and plaintiff was still complaining of leg pain. Dr. Love prescribed Naproxen and scheduled a follow-up visit in four months. When Dr. Love saw plaintiff on September 23, 1999, Dr. Love found that plaintiff was showing some improvement from his previous visit. Medication was helping plaintiff with his complaints of joint pain, and he had significantly reduced his beer consumption. Dr. Love recommended that plaintiff walk 30 minutes per day but, if this proved too painful, he alternatively advised plaintiff to swim and continue with upper body workouts. Plaintiff's next visit to Dr. Love occurred on January 21, 2000. Plaintiff complained of chronic limb pain, but he "continue[d] to get by [with] the help of orthopedic braces, cane and the use of [medication]." Id. at 495. When plaintiff returned on June 13, 2000, his leg pain had significantly lessened, because plaintiff was exercising every day. However, plaintiff had sweating bouts when he was around other people, and Dr. Love attributed this to anxiety.

On July 6, 2000, plaintiff sought a second opinion regarding knee pain, and he visited Robert A. Paulsen, M.D. X-rays showed "very extensive hypertrophic change involving all joint compartments . . . and extensive spurring [was] noted along the tendinous insertion along the medial aspect of the right femoral condyle." Id. at 417. Dr. Paulsen diagnosed plaintiff with post-traumatic arthritis in both knees and referred plaintiff to Dr. Simmons. Dr. Simmons stated that plaintiff had bilateral degenerative joint disease that was gradually worsening. Plaintiff could not stand or walk without significant pain and swelling in his knees. Dr. Simmons saw plaintiff several times over the next month and, on August 30, 2000, he discussed surgical treatments with plaintiff. He explained that plaintiff could undergo a right knee replacement but he informed plaintiff that, because of plaintiff's relatively young age, there was a risk that plaintiff's leg could be amputated if the surgery was not successful. Plaintiff elected to have right knee replacement surgery on October 17, 2000.

Following the surgery, plaintiff reported swelling in his right knee. However, by November 6, 2000, the swelling had gone down significantly and the pain in plaintiff's right knee had improved. With a knee brace, plaintiff could place his full weight on his legs. Plaintiff suffered from swelling in his right knee when he placed weight on his knee, but his range of motion continued to improve over the next month. By December 29, 2000, Dr. Simmons advised plaintiff to increase his level of physical activity, and suggested that he use a stationery bike and resume upper body exercises. He noted that plaintiff could not return to his previous employment, but that he could perform a sedentary job. This would likely require plaintiff to return to school for vocational retraining, but Dr. Simmons believed that plaintiff was physically capable of entering school.

On March 6, 2001, plaintiff was seen for a follow-up visit at the VA clinic. Plaintiff stated that chronic leg pain continued after the surgery, but he had stopped taking Naproxen. Dr. Love was also concerned that plaintiff was showing signs of depression, and he asked plaintiff to take a ZUNG depression screening.[3] Plaintiff score on the test was 64, and plaintiff suggests that this score placed him within a range of persons likely to have serious depression.[4] Dr. Simmons noted that plaintiff showed signs of depression and prescribed Zoloft. Plaintiff's medical records show that his mental state did not improve over the following months, as Dr. Simmons wrote that "Mikel Brown is frustrated. He wants to return to work but cannot do so. He cannot find work with a total knee in

---

[3]  The ZUNG test is a self-rating depression questionnaire. According to plaintiff, approximately 82% of persons with scores above 55 suffer from major depression. However, this information is not part of the administrative record.

[4]  The medical records do not contain any analysis of plaintiff's ZUNG score, and the Court has no basis to evaluate the importance of this finding. Id. at 483.

4

place and a degenerative left knee. Unable to afford having his left knee done. Unable to get on Social Security. Off Workmen's Comp[ensation]." Id. at 452. Dr. Simmons recommended that plaintiff consider a total left knee replacement in the future and that he attempt to reduce his weight.

Plaintiff returned to Dr. Paulsen for a second opinion concerning the need for a left knee replacement, and plaintiff was also complaining about "loose bodies" in his ankles. Dr. Paulsen found some swelling around plaintiff's right knee and some laxity of the right anterior cruciate ligament. He referred plaintiff to Scott Dunitz, M.D., for an orthopedic evaluation of the left knee and ankles, and advised plaintiff to return if his pain worsened. Shortly after this visit, plaintiff was examined by Dr. Love. Dr. Love noted that plaintiff had continuing difficulties from chronic bilateral leg pain, but his depression seemed to be clearing up since he started taking Zoloft.

Dr. Dunitz examined plaintiff on July 17, 2001, and found that plaintiff walked with an antalgic limp. Plaintiff exhibited a good range of motion, but Dr. Dunitz noticed some medial joint line tenderness and mild lateral tenderness. His impression was that plaintiff suffered from joint pain following knee replacement surgery, and he requested a bone scan. Dr. Dunitz summarized the results of the bone scan as follows:

> The flow study and blood pool image show increased activity around the right knee prosthesis in a generalized distribution. The delayed scan shows generalized increased uptake on both sides of the joint and in the patella. The amount of uptake is somewhat greater that expected for this time interval since the patient's surgery in January 2001, however, uptake around prosthetic devices of the knee is highly variable. If there is clinical suspicion of infection, white blood cell imaging, possibly followed by bone marrow imaging, may be useful. . . . There is increased activity in the left knee with a distribution consistent with arthritis.

Id. at 528.

Plaintiff filed an application for SSA benefits on June 19, 2001. In order to qualify for benefits, plaintiff had to show that he was disabled between January 1, 2000 and December 31,

2001, when his insured status expired. The SSA requested that plaintiff submit to a comprehensive internal medical examination by Moses A. Owoso, M.D. Dr. Owoso noted that plaintiff's right lower extremity was larger than his left.[5] Plaintiff's knees appeared stable, but he stated that he suffered from chronic pain in both knees. Dr. Owoso tested plaintiff's knee joints to determine his range of motion, and he found that plaintiff had slightly reduced flexibility in both knees. The examination showed that plaintiff's gait was balanced and stable without assistance from a cane, and that plaintiff could sit, stand, and move from sitting to standing normally. This medical report is the last item in the administrative record that occurred within the relevant period of disability.[6]

The administrative law judge ("ALJ") held a hearing on plaintiff's claim for disability benefits on November 20, 2002. The ALJ determined that "the medical evidence indicates that the claimant has bilateral knee problems, obesity and residuals from a fractured ankle, impairments that are severe within the meaning of the Regulations," and that he did not have the residual function capacity ("RFC") to return to his past relevant employment. Id. at 19. He found that plaintiff retained the RFC to lift up to ten pounds, stand or walk up to two hours during an eight-hour workday, sit for a total of six hours, and no more than occasionally stoop. Based on plaintiff's RFC, the ALJ held that plaintiff could perform a sedentary occupation and "considering the claimant's

---

[5]  Dr. Owoso took measurements of plaintiff's calf and thigh muscles for each leg. Plaintiff's right calf had a diameter of 52 cm while his left calf was 48 cm. His right knee was 50 cm in diameter and his left knee was 46 cm across.

[6]  The administrative record shows that plaintiff visited the VA clinic on March 11, 2002. He complained of chronic bilateral leg pain and exhibited signs of depression. However, Dr. Love did not diagnose plaintiff with depression, and the record does not show if Dr. Love renewed plaintiff's prescription for Zoloft. Defendant does not dispute that plaintiff's condition declined after his insured status expired in December 2001, and the remainder of this evidence is not relevant to the Court's review of the SSA's decision.

age, educational background, work experience, and residual functional capacity, he is capable of making a successful adjustment to work that exists in significant number in the national economy. Id. at 23. Thus, plaintiff failed to prove the fifth step of the five-step evaluation process under 20 C.F.R. § 404.1520, and the ALJ denied his claim for disability benefits. Plaintiff appealed this decision to the SSA Office of Hearings and Appeals, and the ALJ's decision was affirmed.

## II.

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. However, the parties may object to the magistrate judge's recommendation within 10 days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. Fed. R. Civ. P. 72(b).

## III.

Plaintiff objects to the magistrate judge's report and recommendation on three separate bases. First, plaintiff argues that the ALJ disregarded evidence of a functional mental limitation, and the case should be remanded to develop an adequate record on this issue. Second, he argues that the magistrate judge erred when he found substantial evidence to support the ALJ's credibility findings, and that he ignored plaintiff's argument that his pain was not so insignificant that the ALJ could ignore this evidence in step five. Third, plaintiff asserts that the ALJ applied the wrong listing

criteria at step three to plaintiff's claim that his obesity qualified as a disability. The Court will review each of these objections de novo.

**A.**

The ALJ did not find that plaintiff suffered from a severe mental impairment, and rejected depression as a basis for disability in this case. The magistrate judge recommended that the Court affirm the ALJ on this issue, because the ALJ's conclusion was supported by substantial evidence. Plaintiff claims that the ALJ refused to give the opinions of plaintiff's treating physician, Dr. Love, the appropriate level of deference under the treating physician rule.

The ALJ must evaluate every medical opinion in the administrative record, although the "weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004); see also 20 C.F.R. § 404.1527(b) ("In deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence."). The opinions of plaintiff's treating physician do not automatically have to be afforded controlling weight, as the Tenth Circuit has outlined a two-part test to determine if the treating physician rule applies:

> The ALJ must first consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

Hackett v. Barnhart, 395 F.3d 1168, 1174 (10th Cir. 2005). If the ALJ finds that the treating physician's opinion should be rejected, the ALJ must state "specific, legitimate reasons" for so doing. Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987). Even if a treating physician's opinion

is not entitled to controlling weight, the ALJ must consider this evidence under the factors stated in 20 C.F.R. § 404.1527. Langley v. Barnhart, 373 F.3d 1116, 1119 (10th Cir. 2004).

Plaintiff claims that the ALJ's conclusion that there was no evidence of depression was not supported by substantial evidence, because he did not specifically reference Dr. Love' opinion. The ALJ stated:

> The claimant indicated on this disability report that he suffers from depression. However, his medical file contains no evidence that he has ever sought or been recommended treatment by a mental health professional, nor is he taking any psychotropic medication. There is no evidence in the record that the claimant suffers from any depression, and thus this allegation cannot be assessed as a medically determinable impairment.

Admin Rec. at 19. Although Dr. Love administered the ZUNG test and prescribed Zoloft, he does not actually opine that plaintiff was depressed. Dr. Love recorded his impressions that plaintiff was "down" because he could not find a job, but does not analyze the results of the ZUNG test or make a diagnosis of depression. Id. at 483. This falls far short of an opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" that plaintiff suffered from depression. Bernal v. Bowen, 851 F.2d 297, 301 (10th Cir. 1988) (physician's statement that claimant suffered from "major depression," standing alone, did not support a finding that claimant was disabled). In this case, plaintiff has not shown that the administrative record contains a treating physician's opinion that he was depressed, and Dr. Love's statements are not entitled to controlling weight.

Plaintiff must point to other evidence in the administrative record to establish that he had a medically determinable mental impairment. The regulations set out a procedure for evaluating mental impairments, but the claimant must first come forward with evidence that he has a mental impairment that prevents him from working. Cruse v. United States Dept. of Health & Human Services, 49 F.3d 614, 617 (10th Cir. 1995). In general, situational depression based on an alleged

9

inability to find work does not rise to the level of a mental impairment. Dunahoo v. Apfel, 241 F.3d 1033, 1039-40 (8th Cir. 2001); Jones v. Bowen, 829 F.2d 524, 526 (5th Cir. 1987). In this case, the administrative record shows that Dr. Love prescribed Zoloft to plaintiff, but the record is not clear that plaintiff was diagnosed with depression. Medication improved plaintiff's mental state, and Dr. Love did not attribute any loss of functional capacity to plaintiff's alleged depression. Plaintiff was not referred to a mental health specialist and, by August 29, 2001, plaintiff was no longer taking Zoloft. Admin. Rec. at 529. In fact, Dr. Owoso noted that plaintiff was "alert and oriented" and his "affect and mood [were] appropriate." Id. Contrary to plaintiff's assertions, the ALJ did not have a duty to obtain additional evidence concerning a mental impairment, because there was no evidence supporting plaintiff's claim that he had a mental impairment that prevented him from working. Plaintiff has not established the existence of mental impairment, and ALJ did not err when he concluded that plaintiff failed to support his allegation that suffered from depression.

**B.**

Plaintiff raises two objections to the magistrate judge's recommendation that plaintiff did not produce sufficient evidence in support of his claim that disabling pain prevented him from working between January 2000 and December 31, 2001. First, he argues that the magistrate judge improperly relied on the lack of medical evidence showing that plaintiff was unable to perform sedentary work as support for the ALJ's credibility determination. Second, he asserts that his evidence of physical pain was not so insignificant that the ALJ could ignore this evidence at step five.

The ALJ's credibility findings will be affirmed as long as there is substantial evidence in the record to support his decision. Glenn v. Shalala, 21 F.3d. 983, 987-88 (10th Cir. 1994); Diaz v.

Secretary of Health & Human Servs., 898 F.2d 774, 776 (10th Cir. 1990). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Kelley v. Chater, 62 F.3d 335, 337 (10th Cir. 1995). The Court must not reweigh the evidence or substitute its decision for that of the ALJ. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). However, the ALJ must link his credibility findings to evidence in the administrative record, and the ALJ's decision should "reflect[] a full and fair review of the entire factual record relating to plaintiff's alleged impairments." Gay v. Sullivan, 986 F.2d 1336, 1339 (10th Cir. 1993).

The Court has reviewed the ALJ's credibility determinations and concludes that his findings are supported by substantial evidence. In his opening brief, plaintiff alleged that the ALJ ignored evidence that plaintiff used a cane, misconstrued statements by his physicians and failed to consider all of the relevant evidence. The ALJ noted that plaintiff was "overweight and walked with an antalgic gait, using a cane." Admin Rec. at 20. Plaintiff's medical records show that plaintiff was not medically required to use a cane but, rather, he elected to use a cane when he walked. There is no basis to conclude that the ALJ ignored evidence that plaintiff used a cane, as he specifically referenced this evidence in his written findings of fact. He may not have afforded this evidence as much weight as plaintiff would have liked, but it is not within the province of this Court to reweigh the evidence presented to the ALJ. Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).

Plaintiff also claims that the ALJ failed to consider statements by his physicians showing that plaintiff was in significant pain, and he argues that the record is clear that he could not perform a sedentary occupation. He claims that Dr. Simmons stated that plaintiff had difficulty standing and walking because of chronic knee pain, and that other physicians noted that plaintiff's legs were

11

consistently swollen and painful. However, Dr. Simmons was merely recording plaintiff's complaints, and did not actually find a medical reason supporting plaintiff's statement that he could not stand or walk. Admin. Rec. at 424. Throughout the course of Dr. Simmon's treatment of plaintiff, he found that plaintiff had mild restrictions because of a limited range of motion in his right knee, but he did not opine that was incapable of standing or walking. Dr. Owoso noted plainitff's complaints, but found that plaintiff could sit and stand normally and that his gait was balanced. Plaintiff's assertion that the ALJ "ignored the fact that all the physicians indicated Mr. Brown's knees were either tender or significantly painful with standing and walking and even painful enough with prolonged sitting to interfere with concentration," Dkt. # 18, at 8, is not supported by the evidence. The ALJ considered this evidence and the Court does not have the authority to substitute its judgment for that of the ALJ. The evidence in the administrative record provides substantial evidence to support the ALJ's conclusion that physical pain did not prevent plaintiff from performing a sedentary occupation.[7]

As to plaintiff's second objection to the magistrate judge's report and recommendation, the Court finds that the ALJ did not disregard plaintiff's allegations of pain at step five. On the contrary, he stated that "the pain [plaintiff] experienced is limiting but when compared with the total evidence, not severe enough to preclude all types of work." Admin. Rec. at 21. Plaintiff's objection that the ALJ failed to consider evidence of pain at step five is meritless, because the ALJ expressly

---

[7] Plaintiff claims that the magistrate judge relied on an erroneous standard of review, because he discussed the absence of reliable medical evidence in the record supporting plaintiff's argument that he could not perform sedentary work. The Tenth Circuit has stated that the "absence of evidence is not evidence" for purposes of a social security claim. Thompson v. Sullivan, 987 F.2d 1482, 1491 (10th Cir. 1993). In this Opinion and Order, the Court has considered all of plaintiff's citations to the administrative record and has specifically based its decision on the evidence in the record, not the absence of evidence.

12

found that plaintiff's physical pain was a limitation that precluded plaintiff from performing certain types of work. The record shows that plaintiff's pain was a factor in the ALJ's decision, even though the ALJ did not find that the pain was sufficient on its own to justify a finding that plaintiff was disabled. The magistrate judge reviewed the record and determined that the ALJ properly considered evidence of plaintiff's pain. Plaintiff's objection to the report and recommendation based on the magistrate judge's alleged failure to address his argument on pain during step five should be denied, because the ALJ clearly considered this evidence when he reviewed plaintiff's claim.

## C.

Plaintiff's final argument is that the ALJ failed to review plaintiff's claim under the correct listing criteria, because the criteria changed between 2001 (when plaintiff filed the claim) and 2004 (when the ALJ issued his decision). Implicit in plaintiff's argument is an assertion that the ALJ failed to consider obesity as a factor in his disability determination at step five, even if plaintiff's obesity did not satisfy the listing criteria at step three. At his hearing before the SSA Office of Hearing and Appeals, plaintiff waived this argument. When asked if plaintiff was arguing that he met listing criteria under Listing 1.02, plaintiff's counsel clarified that he was not raising this argument on appeal.[8]  Admin. Rec. at 606 (failure to develop an adequate record at the administrative level results in waiver of an issue before the district court); Berna v. Chater, 101 F.3d 631 (10th Cir. 1996) (recognizing that claimant is bound by litigation strategy before the SSA); Crow v. Shalala, 40 F.3d 323 (10th Cir. 1994) (standard waiver rules apply to social security claims); Murrell v. Shalala, 43 F.3d 1388, 1389-90 (10th Cir. 1994) ("This choice of litigation

---

[8] Plaintiff was represented by Paul McTighe throughout his proceedings before the SSA, and he obtained new counsel when filing this action for judicial review of denial of disability benefits.

13

strategy necessarily carries with it adverse consequences for his appeal as a whole."). Plaintiff's argument that the ALJ did not consider the proper listing criteria during step three of the analysis was waived.[9] However, even if the Court were to review the merits of this argument, the Court's discussion below sets forth the complete lack of medical evidence supporting a finding of disability based on obesity, and there is no need to remand for further consideration of this issue.

Plaintiff implicitly argues that the ALJ failed to address the impact of plaintiff's obesity on other symptoms he alleged in his claim for disability benefits. The ALJ noted that the "medical evidence indicates that the claimant has bilateral knee problems, obesity and residuals from a fractured ankle, impairments that are severe within the meaning of the Regulations but not severe enough to meet or medically equal one of the impairments listed in Appendix 1." Admin. Rec. at 19. The ALJ reviewed the medical evidence and found that plaintiff's weight was 321 pounds on August 20, 2001. Plaintiff claims that the ALJ should have addressed obesity as a limitation on his ability to perform sedentary work. However, the medical records provided no basis for the ALJ to make such a conclusion. Although plaintiff's obesity is noted in the medical evidence, the Court can not find that any physician states that plaintiff's weight prevented him from working or was causing him additional pain.[10]

---

[9] Even if the ALJ erred by not considering new listing criteria under step three, this error was harmless and does not provide a basis to remand plaintiff's claim for new proceedings. Fischer-Ross v. Barnhart, 431 F.3d 729 (10th Cir. 2005) ("an ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that claimant's impairments do not meet or equal any listed impairment").

[10] During plaintiff's administrative appeal, the Office of Hearings and Appeals specifically inquired about plaintiff's weight as a factor in the disability determination, even though the listing criteria were not at issue. When plaintiff was asked what symptoms prevented him from working, he discussed his leg and knee pain in depth, but did not mention obesity. Admin. Rec. at 614-20.

There are numerous references to plaintiff's weight in the administrative record, and the ALJ considered this evidence when he denied plaintiff's claim for disability benefits. The ALJ concluded that obesity was a severe impairment, but that plaintiff's obesity did not independently satisfy the listing criteria. He also mentioned weight as a factor in his step five analysis, even though it was not a significant factor. There was no reason to discuss obesity at length, because the medical evidence did not provide any basis for the ALJ to embark on an extended discussion of the impact of plaintiff's obesity. The ALJ's findings are amply supported by the administrative record, and the magistrate judge's report and recommendation should be accepted.

**IT IS THEREFORE ORDERED** that the Report and Recommendation is **accepted**, and the decision of the Commissioner is **affirmed**. A separate judgment is entered herewith.

**DATED** this 28th day of February, 2007.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT